May it please the court. This is a case where... Do you want to state your name and... Oh, I'm sorry. I'm Josephine Gerard and I represent Tracy Mora. Good. Stacey Mora. Can you hear me? Is that better? Okay. So this is a case that's pretty simple. Stacey Mora had a heavy-duty psychiatric record, and at the hearing, the medical expert felt that there was not enough evidence to make a decision. And so they had a supplemental hearing where another 11 records were put in that showed that she had been treated for 20 years. She's had 13 electric shock therapies. She's had numerous treatment. But those records and that discussion were not addressed in the hearing, in the decision. The decision based itself on the medical expert at the first hearing who said there weren't enough records, and the decision in the DDS where the same situation happened. So it's pretty much just procedural because the hearing was based... The decision said the psychiatrist who treated her for 20 years, there wasn't enough treatment. There were no objective testing. But the whole set of records that were admitted afterwards at the supplemental hearing were not addressed. So there isn't substantial evidence that supports the ALJ's hearing or decision. It was an oversight on the ALJ. If I can go into details on her disability is that she developed embolism, and she developed physical problems, and her mental case, and she had suicide idealizations, and she worked with her psychiatrist for 20 years. And when she went to Idaho, she moved. She still saw her psychiatrist through Skype. And then she got another psychiatrist, Dr. Bott. And so anyone who's treated her or who's seen her, who's made an evaluation, finds her unable to sustain work and concentrate and focus. But that was not addressed because of those records were not considered by the ALJ. So is there any areas that you'd like me to go into? No, thank you. I have no questions. Should I go on? Reserve the rest of your time for rebuttal if you wish. Okay. Thanks. Thank you. Good morning, Your Honors. This is Brian Liu appearing for the Commissioner of Social Security. The Social Security regulations set out several factors that an ALJ is required to consider when evaluating medical opinions. One of these is whether or not the doctor presented relevant evidence, particularly medical signs and laboratory findings, to support that opinion. Other factors are whether or not the opinion is consistent with the record as a whole and the nature and the extent of the doctor's treatment relationship with the claimant. In this case, the ALJ considered these factors, and consistent with Ninth Circuit case law, found that Dr. DeSilva, this is the treating psychiatrist, medical opinion, was simply unreliable. That's the California provider. That is the California provider. Dr. DeSilva began treating Ms. Mora in 1998, and just two years later, this was two years before Ms. Mora began working as a sales clerk, a job she held for the next nine years. During this entire time, Dr. DeSilva treated Ms. Mora. His treatment notes contained little, if any, objective clinical findings. And what I mean by this is Dr. DeSilva's treatment notes included a section designed to document clinical findings. We're talking about things such as abnormal mood or depressed mood or difficulties with concentration and memory. As the commissioner has described in his brief, Dr. DeSilva's notes simply contained no such documentation. Where Dr. DeSilva did include clinical observations, these were largely benign. These were largely? Benign, Your Honor. For example, this is on page 1614. Dr. DeSilva described normal examination findings, and these findings included intact cognition, no hallucinations or delusions. The ALJ considered Dr. DeSilva's treatment notes and found that there was simply no clinical findings in here to support Dr. DeSilva's opinion that Ms. Mora's condition was so severe that she met Listing 12.04. Additionally, the ALJ considered other factors that are set out in the regulations. For example, the ALJ looked at the record and determined that Dr. DeSilva's opinion was not consistent with the record as a whole. For example, in March 2014, a treating provider reported normal thought content and form, insight and judgment that was intact, and concentration and intelligence that was normal. This is on page 1142, Your Honors. Four months later, in July 2014, another clinician found the same normal findings. For example, intact memory, normal concentration and intelligence. Ms. Mora states that the issue here is whether or not the ALJ considered the additional evidence that was submitted after the first hearing. This was not addressed in Ms. Mora's opening brief. To the extent the Court feels like this issue was properly raised, this has been addressed by the district court. The ALJ looked at all the additional evidence and simply found there was nothing in there to change the medical expert's testimony. But he didn't comment on it? Excuse me, Your Honor? He didn't comment on it? The ALJ did not comment on it. Under Social Security Ruling 96-6P, the ALJ is required to obtain additional medical expert testimony only when new evidence in the opinion of the ALJ may change a medical consultant's opinion. As district court pointed out, Ms. Mora has not pointed to any evidence that would have changed that. And even in Ms. Mora's opening brief, she hasn't pointed to any additional medical evidence that would have changed the ALJ's opinion. Well, let's discuss that additional evidence. As I understand, Ms. Gerard, she's saying that evidence shows that Ms. Mora does have psychiatric problems. And you represent that the ALJ reviewed that evidence, but the ALJ's decision doesn't mention it. How do you handle that? Your Honor, I'm not quite sure. Respectfully, I'm not sure the ALJ did not mention that new evidence. Tell me where he mentioned it. During the second hearing, Your Honor, the ALJ submitted new evidence. And this would be the newly submitted evidence corresponds to exhibits. This is the administrative exhibits 35F through 48F. And this corresponds to pages 1326 through 1796. And at the beginning of the second administrative hearing, the ALJ admitted this evidence into the record. And by doing so, the ALJ obviously considered that evidence. Now, as I've noted, Ms. Mora just— How do we know he considered the evidence or he didn't say anything about it? I believe the ALJ considered that evidence. And to the best of my knowledge, the ALJ addressed these new documents in the hearing decision. I've looked at the evidence, and I believe there was additional evidence submitted by Dr. Bott. This was a new doctor that began treating Ms. Mora after she moved to Boise in Idaho. And there was simply no assessment or medical opinion offered by Dr. Bott that indicated she had any work-related functional limitations. And in that respect, to the extent there was no evidence to change that was significantly different from evidence that was already submitted, the ALJ properly considered that the M.E.'s testimony at the first hearing— Then would you agree, Mr. Liu, that if the second doctor in Boise didn't find anything which was disabling, then, of course, that doesn't change this case at all. But if he did find something disabling, isn't it the obligation of the ALJ, since we have a treating doctor in Boise, to specifically cite portions of the medical records as to why he doesn't accept the treating doctor's opinion? Yes, Your Honor. In this case— So please point to me anywhere in the record of the decision of the ALJ where he mentions anything about the substance or value of the Boise doctor's treatment records. The ALJ would have pointed to such reports if Dr. Bott had indeed offered an assessment. If he was doing his good job. But if he was doing a bad job, he didn't, right? That's correct, Your Honor. So my question is, again, can you point to me to any portion of the ALJ's decision in which he mentions the findings of the Boise doctor and any reasons why he shouldn't be considered? I can't point to that in the ALJ's decision, Your Honor. Under this Court's case law, the ALJ simply needs to discuss evidence that is significant and probative. If Dr. Bott never offered a medical opinion, there is no reason for the ALJ to have to discuss such evidence. So it turns on the issue of whether Dr. Bott's medical opinion is helpful to Ms. Mora. That's correct, Your Honor. All right. Thank you. And just to reiterate, agency regulations do dictate that clinical evidence is of primary importance. And the ALJ, when evaluating a doctor's opinion, needs to consider whether or not that doctor offered clinical evidence to support or that is consistent with that assessment. In this case, there simply was no such evidence. Accordingly, the ALJ's decision must be affirmed. And unless Your Honors have additional questions, government closes. All right. Ms. Garrard, your rebuttal. I'd like to ask you a question before you start. My notes indicate that the basis of your dispute with the ALJ's reasoning is that it was not supported by the record because purportedly contrary to the ALJ's opinion, De Silva conducted laboratory and psychological testing after 2009. Right. But you don't point to anything in the record that shows that De Silva in fact conducted laboratory or psychological testing after 2009. Could you help me there? So the laboratory testing, of course, starts when she has the electric shock therapy before and after. She's also going under a medication treatment. So the commissioner argues that there should be an objective standardized test. Rather than develop your argument, could you answer the question I asked you? Is there something in the record that you've provided that shows that Dr. De Silva conducted laboratory and psychological testing after the year 2009? Please answer that question. I would have to say that I'm not trying to get around this. It's just that Dr. Bott and Dr. De Silva were working together because one was in Idaho and one was in California. And so the two of them were treating her with different trials of medication. And I propose... Is your claim at this point that when you said De Silva conducted laboratory and psychological testing after 2009, you meant the other doctor, Dr. Bott? Well, they were talking. So she's still receiving treatment through Skype. And the two of them are talking together about the medication. We're talking about laboratory and psychological testing. Right. There's no electric shock therapy after 2009. So I would say there's no electric shock therapy. But if you're on the medication and the treatment of medication, yes, there was. But what about laboratory and psychological testing, which was your claim in your brief? Right. So I'm defining laboratory testing as trials of psychotropic medication. And that was one of the considerations by the medical expert at the hearing, that this is a whole lot of medical psychotropic medication being given, and he didn't understand why. And that's why they opened up the record and brought in all the other evidence to support the continuation of this treatment. All right. So I should interpret the issue, the words, conducted laboratory and psychological testing after 2009 to include the administration of psychotropic medication. You should because it's such a long treatment. It's a longitudinal treatment by a psychiatrist and two psychiatrists, you know, collaborating. This is a very severely chronic progressive disease that Ms. Mora has, and she's never been not under treatment, and it was not addressed by the ALJ. What wasn't addressed? Well, what happened was they asked for the records of the treatment because they said, well, there's hardly any treatment. What was not considered that would have helped your client? I have Dr. Bott's records. Dr. Bott, at 1726-30, reported intact judgment, thought process, cognition, as well as neat grooming and no psychosis. Are there other sound bites? I don't mean that pejoratively, but is there something in the record from Dr. Bott that was not considered that you think would have helped your client's case? The whole, yes, just addressing it because it's not, Dr. Bott's not independent from Dr. De Silva. I don't know what you mean, forgive me, but when you say just addressing it, I'm trying to figure out if there's evidence that you think was overlooked that would have helped your client. Can you point me to any? Well, I would say Dr. De Silva's evaluation that was in 2015 states that because she has a longitudinal history, she's treating her after 2008 by Skype at the same time that they're starting Dr. Bott in Idaho. So this all was going on after 2008. So the evidence you think that was overlooked, forgive me for interrupting, but I'm trying to get at. Right. What was overlooked that you think would have helped your client or changed the outcome, and you think it's Dr. De Silva's 2015 evaluation? Evaluation plus Dr. Bott's backup. And I have to say, just so that we understand the situation, this treatment, every time they're trying to do a trial of psychotropic medication, there's hope that maybe this would help. And unfortunately, it's been progressive and it hasn't helped. But there are times where in the record for 20 years, there are times where Dr. Bott says, you know, it looks good, but in the longitudinal, it wasn't good. And Dr. De Silva writes the whole treatment, and Dr. Bott uses Dr. De Silva. So it's a web. It's just that all that evidence was not addressed by the ALJ. And it's not harmless error because what the ALJ said was that her psychiatrist hadn't seen her enough and hadn't done laboratory testing. And so we're looking at the whole treatment because it's been severe. She's been hospitalized. She's had electric shock therapy. And she moves because her parents can take care of her in Idaho, and she has to get another psychiatrist. And the two of them are working together. So, yes, the evidence, Dr. De Silva in 2015 is addressing, he's also talked to Dr. Bott, and he's considered, you know, the treating physician, and he puts that report in. Did you raise this issue before Judge Bush? Okay. In Judge Bush's, in the district court, that issue was raised as the second issue, and the first issue was raised as. . . Wait, wait. So you raised the failure of the ALJ to address this other medical evidence. Yes, yes, that all those records were not addressed. Yes, that's the second issue. They were not addressed, and the ALJ failed to address them. And they're significant. The way I understand the record, and I could have missed something, there's a conclusion that she truly believes she's got a problem. Yes. But there's no evidence and nothing to support her belief. No, no, no, no. No, she's suicidal, and Dr. De Silva in 2015 writes for the supplement, for this hearing that's going on, all the details of why, and the suicidal inability to concentrate, her focus on her physical problems, and she believes her medication conflicts with it. Now, that's the client's discussion with the psychiatrist, but what they're saying is she doesn't, her physical illnesses do not seem to be debilitating, but the psychiatric evaluation, which is in there by Dr. De Silva, the treating physician, and Dr. Bott uses Dr. De Silva, it's evidence, it's ten medical records that were not addressed by the ALJ that do show she has an inability to, and they weren't addressed, to sustain work, to focus, and to concentrate. The treatment has not worked for her. Electric shock therapy did not work for her. She has 12 sessions of it, and she's gotten progressively worse. No one who's treated her has said, she's fine, everything's just fine, and the ALJ didn't address that. He just said that the DDS, who looked at the evaluation, and the medical expert, he's relying on those, but they didn't have the whole record. So their statements are not addressing the whole record, and the medical expert at the hearing said, I don't have all of Dr. De Silva's records, and we brought them in, and no one discussed them. So what, in your view, would be the ideal solution at this point? Well, I would like, for my client, for this to be credited as true. Dr. De Silva's treating psychiatrist has, you know, 20 years of records and treatment and progress, and it's supported. I would like it credited as true. On the other hand, it could be discussed, at least addressed, because this is pretty evident from the whole record. It's when you have a half of a record, it looks odd, and that's what the medical expert said, that's what the DDS said. It's a segment, and we have, we need 2008 to 2000 to the time of the hearing addressed, because it's a progressive, chronic problem. The government probably thinks this is unusual rebuttal, because he's not going to get an opportunity to answer. A new matter has come out in this conversation. Well, it feels very clear from my standpoint, and I think that, you know, my colleague is trying to bolster the ALJ's decision, but the ALJ's decision doesn't, is not supported by substantial evidence, because we have, like, almost half of a record not discussed. All right, thank you very much. We've taken you past your time. The case of Mora versus Saul will be submitted, and we thank counsel for their argument, and we will proceed to the next case.
judges: Farris, Bea, Christen